James R. WILLIAMS, Appellant,

v.

GLOBE INDEMNITY COMPANY, Appellee.

No. 74–1287.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1974.

Decided Oct. 30, 1974.

Rehearing and Rehearing En Banc Denied Dec. 5, 1974.

Certiorari Denied April 28, 1975. See 95 S.Ct. 1679.

Richard H. Mays, Mays & Landers, El Dorado, Ark., for appellant.

Francis L. Kenney, Jr., St. Louis, Mo., and William S. Arnold, Crossett, Ark., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Appellant Williams embezzled approximately $50,000 from his employer, Monsanto. The embezzlement was discovered by March 12, 1970, and Williams confessed in detail to his employer on that date. The employer made a claim against its insurer (Globe), the appellee, on a blanket crime policy, and Globe paid the employer the amount embezzled, minus a deductible, on August 31, 1970. Globe brought this diversity action against Williams on June 7, 1973, to recover the sum paid. Summary judgment was granted in favor of Globe. The sole issue presented on appeal is whether or not the District Court erred in denying Williams' motion for summary judgment based on a statute of limitations defense. We hold that Globe's action was barred by the statute of limitations and, therefore, reverse and remand with directions to enter judgment in favor of appellant Williams.

Both parties agree that the applicable statute of limitations is Arkansas Statute 37-206, which provides:

The following actions shall be commenced within three [3] years after * * * the cause of action shall accrue: First, all actions (of debt) founded upon any contract, obligation, or liability, (not under seal [and not in writing],) excepting such as are brought upon the judgment or decree of some court of record of the United States, of this, or some other State; * * * fourth, all actions (of account, assumpsit, or on the case,) founded on any contract or liability, expressed or implied; * * * sixth, all actions for taking or injuring any goods or chattels.

This statute has been held to apply to actions based upon common law fraud, deceit, or conversion. See, Air Leases v. Baker, 167 F.Supp. 145, 148 (W.D. Ark.1958); Conditt v. Holden, 92 Ark. 618, 123 S.W. 765 (1909); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970) (dictum). Globe does not deny that it applies to the embezzlement here. The statutory period under this enactment commences to run at the time of the discovery of the fraud. See, Wrinkles v. Brown, 217 Ark. 393, 230 S.W.2d 39, 41 (1950); Metropolitan Life Ins. Co. v. Williams, 197 Ark. 883, 125 S.W.2d 441, 448 (1939); Wright v. Lake, 178 Ark. 1184, 13 S.W.2d 826, 827 (1929). Since the employer discovered the embezzlement on March 12, 1970, the statute of limitations barred the employer's cause of action for recovery of the money after March 12, 1973.

Globe contends that, notwithstanding foreclosure of the employer, its own cause of action did not "accrue" under the statute until its payment to Monsanto. Since suit was brought within three years of that date, it argues that the District Court was correct in holding that its action was not barred. The appellant contends, on the other hand, that Globe is suing solely in its capacity as subrogee of the rights of the employer, and that it is settled law that a subrogee can acquire no more rights against a third party than are held by its subrogor. Hence, he argues, Globe is subject to the identical bar under the statute as was its subrogor, Monsanto, and having failed to bring the action within three years of the discovery of the embezzlement, Globe's cause of action is barred. We agree with the latter view.

The theory of subrogation is that the subrogee steps into the shoes of his subrogor. As such, he takes subject to all defenses which the third party could have asserted against the subrogor, including the statute of limitations:

> Since the insurer's claim by subrogation is derivative from that of the insured, it is subject to the same statute of limitations as though the cause of action were sued upon by the insured. * * *

16 Couch, Insurance 2d, § 61:230 at 367 (1966) (footnotes omitted).

This general rule of subrogation law was recognized by the Arkansas Supreme Court in Ogden v. Watts, 186 Ark. 500, 54 S.W.2d 292 (1932):

> It is the law, however, as is very clearly stated in Charmley v. Charmley, [125 Wis. 297, 103 N.W. 1106 (1905)] that the right acquired by the party thus subrogated is to use the security just as the original holder thereof might have done, and that "the devolution of such cause of action does not interrupt the running of the statute. Upon the termination of the full statutory period measuring the life thereof, it is destroyed. * * * To enable a person to see what interest one has in the property of another by the right of subrogation, he must look at the matter from the viewpoint of the original owner before the devolution." [Id. at 1111.]

Ogden v. Watts, supra at 292.

Admittedly, the Ogden case is distinguishable since the statute of limitations had already expired on the subrogor's claim before the subrogation took place, and, therefore, the subrogor had no viable cause of action to convey to the subrogee. But the Charmley case, which it quoted, involved a subrogation which took place before the statute had expired, and the court there held that the act of subrogation had not affected the running of the statute:

> * * * As we have said, where once the statute of limitations has commenced to run on a cause of action, no circumstance, not expressly provided by statute—and we have no statute applying to the circumstances here—will interrupt it. * * *

Charmley v. Charmley, supra 103 N.W. at 1111.

Two recent cases in other jurisdictions have reached the same result where an insurance company became subrogated to its insured by paying off an uninsured motorist claim, and then proceeded to sue the uninsured motorist after the statute of limitations would have barred a direct action by the insured. See, American States Ins. Co. v. Williams, 278 N.E.2d 295 (Ind.App. 1972); Insurance Co. of North America v. Carnahan, 446 Pa. 48, 284 A.2d 728 (1971). In each instance, the court held that the statute began to run from the date of the accident, rather than the date of the award or payment to the insured. We agree that this is the proper rule and, therefore, hold that since the subrogor, Monsanto, was barred by the statute, Globe, as its subrogee, was also barred.

We turn briefly to Globe's alternate contention that an implied or "quasi" contract of indemnity arose upon payment by Globe to the employer, under which contract Williams only then became obligated to reimburse Globe. The cases cited by Globe do not support this argument.

For example, Wolverine Ins. Co. v. Tower Iron Works, Inc., 370 F.2d 700 (1st Cir. 1966), was an action for allocation of loss between two tortfeasors. There, a person injured while diving into a swimming pool settled with the pool owner's insurance company. The insurer then sued the installer of the pool for indemnification, and the installer claimed that it could no longer be sued because the pool had been installed eight years earlier. The Court made it clear that it permitted suit only on a theory of common law indemnity which was triggered because the owner and

installer were "two tort-feasors not *in pari delicto*." *Id*. at 703. Here, on the other hand, no joint tortfeasors are involved, and there is but classic subrogation.

Federal Ins. Co. v. Summers, 330 F.Supp. 1041 (D.Mass.1970), also fails to support Globe's theory. In that case, a customer made a deceitful misrepresentation, in 1958, to a brokerage house (Hutton). He claimed that he had not received certain securities. New securities were delivered to the customer and an indemnity bond was entered into by an insurance company in reliance on the customer's proof of loss statement. The fraud was concealed until 1966; on discovery, the insurer paid Hutton for the loss and promptly brought a successful action against the customer. That case can be distinguished from the present one on two grounds: (1) the customer had made a direct misrepresentation to the insurer in submitting the false proof of loss; and (2) the statute of limitations had *not* expired against the *subrogor* (Hutton), because the fraudulent concealment had tolled its running. Thus, *Federal Insurance* is fully consistent with the rule that a subrogee is barred by the same limitation period as is the subrogor.

Globe's contention that it is not suing solely on a narrow theory of subrogation, but has some broader right to indemnity, is similar to a claim rejected by the court in American States Ins. Co. v. Williams, *supra*, 278 N.E.2d at 299–300:

> The point of departure between the parties is not whether the right of subrogation existed but rather the exact nature of the right. Appellant argues that the insurer acquires the right of indemnification against Appellee when actual payment is made to its insured, thereby implying that an insurer has some type of implied contract or liability imposed by law vis-a-vis the uninsured motorist * * *.
>
> * * * * * *
>
> As a general rule, indemnity is not allowed absent an express or implied contract. There are, however, certain exceptions as between joint tort-feasors, one of whom was liable only because of his relationship to the other joint tort-feasor, or because of a specific statute where the right is imposed. None of these exceptions are applicable to this case.
>
> The duty of the insurer to pay damages arises solely out of its contract with its insured and not by reason of any special relationship between the insurer and the uninsured motorist. The rights acquired by the insurer upon payment to the insured are solely derivative rights of subrogation. * * *
>
> * * * * * *
>
> * * * Thus, the insurer stands in the shoes of the insured and takes no rights other than those which the insured had, and this is true regarding the applicable statute of limitations. * * *

We conclude that Globe had no separate right to indemnification on the facts of this case. The only rights it asserted against Williams were subrogation rights derived from Monsanto. Therefore, since Globe's subrogor would have been barred by the statute of limitations, it was error for the District Court to refuse to grant summary judgment in favor of defendant Williams. The judgment below is accordingly reversed and the cause remanded with directions to enter judgment in favor of Williams and against plaintiff Globe.